# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 19-CV-24821-CANNON/LOUIS

MARINE DEPOT,
INTERNATIONAL, INC.,

      Plaintiff,

v

JAMES RIVER GROUP, INC.,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** comes before the Court on Defendant James River Group, Inc.'s ("James River") Motion for Summary Judgment (ECF No. 181). All pre-trial dispositive matters have been referred to the undersigned by the Honorable Aileen M. Cannon, United States District Court Judge, for a report and recommendation (ECF No. 174). Upon review of the Motion, Plaintiff's Response (ECF No. 188), Defendant's Reply (ECF No. 195), and the corresponding Statement of Facts (ECF Nos. 180; 187; 194) the undersigned respectfully **RECOMMENDS** that Defendant's Motion for Summary Judgment (ECF No. 181) be **GRANTED** as follows.

## I.    BACKGROUND

### A.  Factual Background

Plaintiff MDI initiated this suit against Defendant James River alleging claims for breach of contract, unjust enrichment, and promissory estoppel (ECF No. 180 at ¶¶ 2-3, 6-7). Plaintiff alleges that in 2016, the Parties orally agreed to form an information technology ("IT") company in India and in 2017, again orally agreed that Defendant would purchase the company from MDI for $7.5 million (*id.* at ¶ 1). Plaintiff alleges that it incurred the expense to establish the India-based

1

company, which it named "Ayassure," and provided IT services to Defendant through Ayassure at below market rates. Plaintiff alleges that Defendant breached their oral agreement to buy Ayassure and has been unjustly enriched by receiving IT services at below market rates.

The following facts are derived from the Parties' respective Statements of Facts (ECF Nos. 180; 187). James River's Statement of Facts specifies that it accepts certain allegation and testimony as true only for the purposes of its Motion for Summary Judgment (ECF No. 180 at 1). Where Plaintiff's Statement of Facts nonetheless disputes Defendant's version of the facts, or advances additional facts, those disputes are noted herein.

Mr. Joji Singh is the sole owner and CEO of Plaintiff MDI. In April 2016, on behalf of MDI, Singh orally agreed with James River's Senior VP and Chief Information Officer Raju Sodhi to establish an India-based IT company, Ayassure, which would be run jointly by the Parties (ECF No. 180 at ¶¶ 9-11). The Parties agreed that "(a) MDI would undertake the substantial investment and risk necessary to create an IT services company in India named Ayassure; (b) James River and MDI would jointly operate Ayassure; (c) MDI would charge James River far-below-market rates for Ayassure's services while the Parties worked together to establish the proof of concept; and (d) if the concept proved to be successful after a trial period, then the Parties would agree on a price for James River to acquire Ayassure from MDI" (ECF No. 187 at ¶ 35).[1]

Ayassure was thereafter established by Mr. Singh, who was the sole proprietor of Ayassure (ECF No. 180 at ¶ 18). Though James River was heavily involved in the creation and operation of Ayassure (ECF No. 187 at ¶ 36), MDI absorbed "the risk of starting up," and invested approximately $150,000.00 (ECF No. 180 at ¶ 24; 187 at ¶ 37). This investment included MDI's leasing of office space in India; creating an entire suite of business operations, including phone,

---

[1] Again, Defendant accepts Plaintiff's allegations and testimony regarding this oral agreement as true for purposes of its Motion only but disputes that an agreement to purchase was made.

internet, and computer networks; purchasing equipment such as computers and monitors; developing a recruitment process and narrowing the applicant pool down to 26 employees; establishing a comprehensive on-boarding regimen for incoming employees; and training those employees to handle all of James River's IT-servicing needs (ECF Nos. 187 at ¶ 37; 180 at ¶ 23). Ayassure provided IT services to James River under terms memorialized in written work orders, which were fully executed by both Parties, with Mr. Singh executing on behalf of both Plaintiff and Ayassure (ECF No. 180 at ¶ 20). The work orders established a start date and the hourly rates to be charged to James River by Ayassure for each of the IT consultants who provided services to James River (ECF Nos 180 at ¶ 20; 151-2).[2] The hourly rates set were below market, a concession Plaintiff gave in anticipation that Defendant would purchase Ayassure. The work orders noted that the duration of the service contract was "[p]ermanent, until terminated with 45 day notice" (ECF No. 151-2).

On December 28, 2017, after the proof of concept was completed and Ayassure was not only up and running but had proven successful (ECF No. 187 at ¶¶ 40-41), the Parties entered into a second oral agreement that James River would purchase Ayassure from MDI, to whom ownership of Ayassure would be assigned (ECF Nos. 180 at ¶¶ 1, 15; 187 at ¶ 17). This oral agreement, which is the basis for this litigation,[3] had only two terms: "a $7.5 million purchase price" and "a six-to-seven month payment timeline" (ECF No. 180 at ¶ 15). Indeed, Plaintiff describes the "simple agreement" that is the subject of this lawsuit: "[s]pecifically, MDI agreed to sell Ayassure, James River agreed to purchase it, and the parties agreed that the sale price was $7.5

---

[2] Plaintiff does not dispute these facts but notes in its Statement of Facts that these work orders were not executed contemporaneously with the work provided, relying on a post-deposition affidavit by Singh (ECF No. 187 at ¶ 20).
[3] MDI concedes that it is suing for breach of the December 2017 agreement only and that James River did not breach the April 2016 agreement (ECF No. 187 at ¶¶ 9, 14).

million" (ECF No. 187 ¶ 49).

James River never did purchase Ayassure from MDI. James River continued to obtain IT services through Ayassure for nearly two years after the December 2017 oral agreement, until James River terminated the relationship with Ayassure by email in accordance with the 45-day termination provision contained within the work orders (ECF No. 180 at ¶ 21). Plaintiff contends that James River set up a competing India-based IT company, called Carmen Solutions, in same building as Ayassure, and that it used this competitor company to poach Ayassure's employees (ECF No. 187 at ¶¶ 46, 48-50).[4]

### B. Procedural Background

Plaintiff initiated this suit alleging breach of contract (Count I); unjust enrichment (Count II); and promissory estoppel (Count III) (ECF No. 17). On October 30, 2020, Defendant moved for summary judgment, arguing that MDI lacked standing to bring any of its claims (ECF No. 144). That motion for summary judgment was denied without prejudice by the Court for failure to comply with Local Rule 56.1, which requires a motion for summary judgment to be accompanied by a separate and contemporaneously filed Statement of Material Facts (ECF No. 173).

Defendant filed the instant Motion for Summary Judgment (ECF No. 181) on December 21, 2020. The instant Motion for Summary Judgment similarly argues that MDI lacks standing to bring its breach of contract claim because it "lost nothing and suffered no 'injury in fact'" (*id.* at 3-7). The instant Motion for Summary Judgment alternatively argues that  summary judgment is warranted on the breach of contract claim because the evidence, even accepting all facts advanced by Plaintiff, fails to show there was a meeting of the minds on essential terms to enforce an oral contract. Defendant additionally argues that the oral contract cannot be enforced because there was

---

[4] This fact is disputed. James River maintains that it had no relation to Carmen Solutions and had no involvement in securing employees for Carmen Solutions (ECF No. 194 at ¶ 48).

an expectation that the oral agreement be reduced to writing and because the oral agreement violated the statute of frauds (*id*. at 7-14). Defendant further seeks summary judgment on MDI's unjust enrichment claim, which is contingent upon the existence of an oral agreement and contradicted by the Parties' mutually executed written agreements (*id*. at 14-17). Lastly, Defendant argues that summary judgment must be entered with respect to MDI's promissory estoppel claim for it incorporates allegations of an express agreement; MDI cannot circumvent the Statute of Frauds; and MDI is unable to prove any damages (*id.* at 14-18).

In Response, Plaintiff argues that MDI has standing under Florida law[5] to bring its claims (ECF No. 188 at 8-12). Plaintiff further avers that the Parties' agreement is enforceable, and if it is not, then James River was unjustly enriched (*id*. at 12-18). Lastly, MDI concedes that its promissory estoppel claim should be voluntarily dismissed, without prejudice (*id.* at 18-19).

In Reply, Defendant challenges Plaintiff's additional facts as immaterial and insufficient to defeat summary judgment. Defendant also asserts that Plaintiff's request for dismissal of its promissory estoppel claim is procedurally improper, and that if dismissed, it should be dismissed with prejudice (ECF No. 195 at 9-10).

## II.    STANDARD OF REVIEW

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp*. *v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the

---

[5] The Parties both agree that Florida law applies to the substantive claims.

movant must identify an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must support its assertion that a genuine material fact remains in dispute by citing to specific parts of the record. *Sutton v. Royal Caribbean,* 285 F. Supp. 3d 1349, 1351 ("In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, answers to interrogatories, and admissions that a specific fact exist demonstrating a genuine issue for trial."). A fact or issue is material for purposes of summary judgment only if it might affect the outcome of the suit under the governing law. *Webb v. Carnival Corp.*, No. 15-CV-24230, 2017 WL 10795681, at \*2 (S.D. Fla. Jan. 13, 2017). Summary judgment is proper "against a part who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Id.* (citing *Celotex Corp.*, 477 U.S. at 323).

In considering a motion for summary judgment, the Court must evaluate the evidence and make all inferences in the light most favorable to the nonmoving party. *Sutton*, 285 F. Supp. at 135 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586). However, the nonmoving party may not merely point to a scintilla of evidence that creates a metaphysical doubt about an issue; instead, the evidence must be sufficient to allow a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co*, 475 U.S. at 586-87.

### III.    ANALYSIS

### A.    Summary Judgment on Breach of Contract Claim

Defendant avers that summary judgment should be granted as to Plaintiff's Count I for

Breach of Contract because MDI does not have standing to bring this claim. In the alternative, Defendant argues that even if MDI has standing, its breach of contract claim fails because the alleged oral agreement lacked sufficient definiteness on essential terms and is unenforceable. Relatedly, Defendant asserts that the contract is unenforceable because MDI expected the alleged agreement would absolutely be reduced to writing; and because the agreement included the sale of goods, the failure to reduce to writing violates the statute of frauds.

Plaintiff's evidence is sufficient to create a material disputed fact over its injury and thus confer standing, but I nonetheless ultimately recommend the Court grant summary judgment in favor of Defendant on Plaintiff's breach of contract claim because the evidence of the oral agreement lacked indicia of meeting of the minds on terms essential for the sale of this ongoing business. Indeed, Plaintiff's response to Defendant's statute of frauds argument here relies on the *absence* of evidence that the Parties agreed to the sale of the office equipment owned by Ayassure, and I agree that Defendant has not demonstrated its entitlement to summary judgment on that basis. Similarly, while there is no dispute that the Parties expected to reduce the oral agreement to writing, the evidence is not without dispute that Plaintiff intended it be reduced to writing before it be enforceable, and I likewise do not recommend summary judgment on this basis either.

### i.      MDI's Standing

Defendant avers that Plaintiff lacks standing to bring its breach of contract claim based on the fact that MDI never owned Ayassure and thus could not be damaged by the breach of the alleged oral contract. In advancing this argument, Defendant relies solely on Mr. Singh's deposition testimony that he owned Ayassure individually and that MDI does not own any other companies or have any subsidiaries (ECF No. 181 at 5 (citing ECF Nos. 180-2 (Singh Dep.) at 15:3-18:1; 180 ¶ 6)). The fact that Ayassure was owned individually by Mr. Singh is not disputed.

Instead, to combat the notion that MDI lacks standing, Plaintiff relies on Mr. Singh's declaration that he was "ready, willing and able" to transfer ownership of Ayassure to MDI (ECF No. 188 at 9 (citing ECF No. 187-1 (Singh Decl.) at ¶¶ 9-12)). Plaintiff further avers that at all relevant times, Defendant was aware Mr. Singh individually owned Ayassure (ECF No. 187 at ¶ 45).

Defendant has the burden of demonstrating a lack of standing. *See Zuma Seguros, CA v. World Jet of Delaware, Inc*., No. 15-22626-CIV, 2017 WL 4237874, at *9 (S.D. Fla. Sept. 25, 2017) (placing the burden of proving entitlement to summary judgment based on plaintiff's lack of standing on the moving defendant). The Supreme Court has long recognized that "[a] contract for the sale of personal property which the vendor does not own or possess, but expects to obtain by purchase or otherwise, is binding if an actual transfer of property is contemplated." *Irwin v. Williar*, 110 U.S. 499, 507 (1884); *see also Bibb v. Allen*, 149 U.S. 481, 492 (1893) (same). Plaintiff advances the testimony of Mr. Singh, by way of declaration, stating his intention to assign ownership of Ayassure to MDI to effectuate the sale to James River (ECF No. 187-1). For purposes of this Motion, his testimony is sufficient evidence that MDI expected to obtain Ayassure to consummate the sale.

Moreover, as alleged in the Complaint and acknowledged by the Parties, the contested oral agreement was for James River to Purchase Ayassure *from MDI*, and thus MDI is a party to the averred contract (ECF Nos. 180 at ¶ 1; 187 at ¶¶ 1, 43). As a party to the alleged agreement, and the party to benefit from the alleged agreement, MDI has a legally protected interest and suffered concrete harm from Defendant's breach—assuming for now that the oral contract exists and is enforceable—and therefore has standing to sue. *See Hershey Co. v. Cadiz*, No. 05-60999-CIV, 2006 WL 8431511, at *2 (S.D. Fla. May 9, 2006) ("as a party to the contract, [plaintiff] has standing to bring claims for breach of that contract"); *Mustakas v. Integon Nat'l Ins. Co*., No. 9:19-

CV-80911, 2019 WL 6324259, at *2 (S.D. Fla. Nov. 26, 2019) ("Ordinarily, only parties to a contract or third-party beneficiaries have standing to sue for breach of the contract."). As such, the Court finds MDI has standing to sue James River for the breach of the alleged oral contract between MDI and James River, and recommends denying Defendant's Motion for Summary Judgment (ECF No. 181) on this basis.

ii.      **Meeting of The Minds on Material Terms of the Alleged Oral Agreement**

Defendant avers that the purported oral agreement for James River to purchase Ayassure from MDI is unenforceable because there was no meeting of the minds on all essential terms. To demonstrate the lack of agreement as to all essential terms, Defendant relies on Mr. Singh's deposition testimony that the Parties agreed to only two terms: the price and a purchase timeframe of six to seven months (ECF No. 181 at 9 (citing ECF No. 181-2 (Singh Dep.) at 106:11-19)). Defendant further evidences a lack of a meeting of the minds through Mr. Singh's testimony regarding other terms essential terms that were not agreed to, such as manner of payment and ownership transfer (*id*. at 10-12 (citing ECF No. 180-2 (Singh. Dep.) at 118:13-120:25, 119:2-5, 120:8-22); ECF No. 180 at ¶ 16). In Response, Plaintiff claims that all essential terms were agreed to over the course of the relationship, so that in December of 2017 only the terms of sale price and timing remained to be agreed upon; Plaintiff avers for purposes of this Motion, the "*only* dispute" is whether the Parties agreed to the final sales price, a dispute that cannot be resolved on summary judgment (ECF No. 188 at 14 (emphasis in original)).

Under Florida law, "[i]n order to form an enforceable oral contract, there must be a meeting of the minds on all essential terms and obligations of the contract," not just the sale price. *Venus Lines Agency, Inc. v. CVG Int'l Am., Inc*., 234 F.3d 1225, 1229 (11th Cir. 2000) (citations omitted). "For an oral contract to be established, it must be shown that the parties reached a clear and definite

agreement with no essential terms left open." *PNCEF, LLC v. Highlander Enterprises, LLC*, No. 09-80974-CIV, 2010 WL 11504754, at *3 (S.D. Fla. Mar. 2, 2010) (applying Florida law). However, "[w]hat constitutes the essential terms will vary widely according to the nature and complexity of each transaction and will be evaluated on a case by case basis . . . ." *Id.* (citations omitted).

Here, it is averred and uncontested that the December 28, 2017 oral contract at issue established only two terms: (1) Ayassure would be sold by MDI to James River for $7.5 million dollars and (2) that the sale would take place "within six to seven months" (ECF No. 181 at 9 (citing ECF No. 180-2 (Singh Dep.) at 106:11-19)). Defendant asserts that this agreement leaves out other essential terms not agreed to or discussed, as evidenced by Mr. Singh's testimony (ECF No. 181 at 10 (citing ECF No. 180-2 (Singh. Dep.) at 118:13-120:25, 119:2-5, 120:8-22)). Indeed, it is undisputed that Mr. Singh testified to the fact that there was no specific date agreed upon for the purchase of Ayassure; there was no discussion of whether payment would made in a lump sum or multiple payments; there was no agreement as to what entity would be purchasing Ayassure at the time the purchase agreement was made; there was no agreement on how ownership would transfer; and there was no discussion or agreement regarding what needed to occur at James River in order to approve the purchase of the company (ECF No. 180 at ¶ 16 (citing ECF No. 180-2 (Singh Dep.) at 118:13 -120:25, 119:2-5, 120:8-22)).

Perhaps most glaringly, the agreement lacks mutual assent on the asset to be purchased—what Plaintiff intended to sell, and James River agreed to purchase. The Motion and Plaintiff's Response reveal that the Parties did not have a clear understanding as to whether the purported contract included the sale of Ayassure's tangible goods, such as computers and routers—Defendant arguing that the oral agreement is barred by the Statute of Frauds since it encompassed

the sale of Ayassure's tangible goods exceeding $500.00, and Plaintiff correctly arguing that there is no evidence whatsoever reflecting that the Parties intended their contract to include the sale of any goods.[6] Plaintiff here advances only the post-deposition declaration of Mr. Singh to evidence that the agreement "was for the sale of a company, Ayassure" and the sale of any goods "*would have been* merely incidental." ECF No. 187 ¶ 44 (emphasis added). But Mr. Singh's vague assertion here, taken in the light most favorable to Plaintiff as non-movant, is woefully indefinite to describe that which he claims was the subject of the oral agreement considering the reality that this was a business with employees, assets, and an ongoing partnership with the entity agreeing to purchase it. An oral agreement will not be enforced if the party seeking enforcement fails to even allege agreement on the material terms. *PNCEF, LLC v. Highlander Enterprises, LLC*, No. 09-80974-CIV, 2010 WL 11504754, at *3 (S.D. Fla. Mar. 2, 2010) (granting motion to dismiss claim for breach of an oral agreement that would have modified a loan agreement, where terms of alleged financing where not even pled).

Plaintiff argues that "the oral agreement at issue in this case was the product of a series of prior agreements and understandings" and that "the parties had already smoothed out all of the essential terms of the inevitable sale that might frustrate a different set of parties negotiating a different agreement under different circumstances" (ECF No. 188 at 13). As such, Plaintiff claims that "James River and MDI had slowly hammered out all possible complications on the front of their deal so that, by December 28, 2017, all that remained was to set the sale price (of $7.5 million) and an outside sale date (of July 2018)" (*id*. at 14). What "terms" Plaintiff is describing here is a mystery; they are nowhere described in its Response or Statement of Facts. Plaintiff provides no

---

[6] For its statute of frauds defense, Defendant relies on Plaintiff's allegations of supplies purchased and owned by Ayassure, but does not advance any evidence that the oral agreement was for the sale of goods. Because the inclusion of the sale of tangible goods within the agreement to purchase Ayassure is disputed, and there is no evidence that the agreement included the sale of goods, summary judgment should be denied on this ground.

evidence to support these averments, pointing only to Singh's Declaration, which merely reaffirms the two terms of the oral agreement and does not evidence the proffer being made (ECF No. 187-1 at ¶ 6). MDI has not disclosed any of these prior agreements or evidenced these alleged understandings regarding essential terms; nor has Plaintiff set forth the essential terms that were allegedly smoothed out. While the Court recognizes that there was an ongoing relationship between Ayassure and James River, there is no evidence that anything beyond a purchase price and rough purchase timeframe was agreed upon in relation to Ayassure's sale.

According to Defendant, these missing terms are essential for a highly complex transaction that involved the purchase of an ongoing business (ECF No. 181 at 10). Plaintiff on the other hand, contends that the deal was "simple" and compares it to *Specialized Transp. of Tampa Bay, Inc. v. Nestle Waters N. Am., Inc.*, 2009 WL 1046135, at \*5 (M.D. Fla. Apr. 19, 2009), *aff'd*, 356 F. App'x 221 (11th Cir. 2009). However, the circumstances in *Specialized Transp. of Tampa Bay, Inc.*, are not similar to the instant action, which stems from an alleged contract to purchase an ongoing business for millions of dollars. In *Specialized Transp. of Tampa Bay, Inc.*, the contract only related to the reimbursement of start-up costs for setting up a test program totaling roughly half a million dollars. *Id.* at \*6. There, the court only addressed the lack of agreement as to a specific monetary price, finding that the absence of a specific monetary figure for the start-up costs did not prevent a meeting of the minds where plaintiff followed the instructions of defendant in starting the program, and the parties were capable of determining the approximate cost. *Id.* The *Specialized Transp. of Tampa Bay, Inc.* court did not, however, make a determination as to the simplicity of the agreement and how that effected the essential terms. Here, on the other hand, the contract at issue is to buy an ongoing business for $7.5 million, which involves far more complexities than a simple reimbursement, such as retention and transfer of employees, office

12

space and other tangible assets.

While the evidence here is scant, it is sufficient to demonstrate that at the time the oral agreement allegedly occurred, Ayassure was an ongoing business with a variety of assets including office space, employees, and income stream. The purchase of such an ongoing business is sufficiently complex such that an agreement only as to price and estimated timeframe lacks indicia of agreement on essential terms. For example, in *Theocles v. Lytras*, 518 So. 2d 936, 936-37 (Fla. 3d DCA 1987) the court determined there to be "no proof of the essential terms necessary to the formation of a binding agreement" for purchase of interest in a business where "there were no agreements or discussions regarding a closing date, releases, tax and other liabilities, or obligations to the owner of the business premises which were leased in the names of the parties as individuals." Similarly, in *Bus. Specialists, Inc. v. Land & Sea Petroleum, Inc*., 25 So. 3d 693, 696 (Fla. 4d DCA 2010), the court found there to be no enforceable contract for a sale of a business and land because the parties failed to agree on all essential terms, which included seller financing and continued employment of the seller's principal. And in *Zell v. Cobb*, 566 So. 2d 806, 808 (Fla. 3d DCA 1990), the court found there to be no enforceable agreement to purchase equity interest in a company where the parties "did not know the identity of the party or parties to be bound by the alleged contract; the identity of the corporation in which the shares were to be purchased; . . . the date on which the shares were to be purchased and delivered; or the terms and conditions of the leveraged buy-out"). Here too the Parties had not agreed to many of these essential terms including a closing date, financing, the identity of the entity to purchase Ayassure and ownership transfer (ECF No. 181-2 (Singh. Dep.) at 118:13-120:25, 119:2-5, 120:8-22).

As such, the undersigned hereby **RECOMMENDS** that Defendant's Motion for Summary

Judgment (ECF No. 181) be **GRANTED** as to Count I for Breach of Contract.[7]

### iii.        Expectation that the Alleged Oral Agreement Would be Reduced to Writing

Defendant further argues that summary judgment is appropriate because MDI expected that the alleged oral agreement would be reduced to writing (ECF No. 181 at 12). To evidence this proffer, Defendant relies on the deposition testimony of Mr. Singh that he "absolutely" expected that the oral agreement would eventually be put in writing (ECF No 180 at ¶ 19 (citing ECF No. 180-2 (Singh Dep.) at 111:6-10)). In response, Plaintiff relies on Mr. Singh's declaration to insist that "the [P]arties intended this oral agreement to be binding immediately despite the fact that we expected to memorialize it in writing" (ECF No. 187-1 (Singh Decl.) at ¶ 7).

The Florida Supreme Court has held that the mere intention to put an agreement in writing "is not, of itself, sufficient to show that the parties did not intend the [ ] contract to be regarded as complete and binding without being put in writing." *Ocala Cooperage Co. v. Fla. Cooperage Co*., 59 Fla. 390, 52 So. 13, 16 (Fla. 1910). As the Eleventh Circuit has explained, it is the parties' intent that determines whether or not an oral contract is binding on the parties. *Lifecare Int'l v. CD Medical*, 68 F.3d 429, 436 (11th Cir.1995) (finding sufficient evidence to conclude the parties intended to be immediately bound by their negotiations, regardless of whether the negotiated terms were reduced to writing). If the parties did not intend to be bound by an agreement until it was reduced to writing, then it is not until the agreement is reduced to writing that the parties are bound; if the parties intended to be immediately be bound by their agreement, then they are immediately bound, even if they contemplated receding the agreement to writing. *See id.*

Mr. Singh's *expectation* that the Parties would reduce the agreement to writing does not,

---

[7] While the finding that the Parties failed to agree on all the essential terms, and thus did not enter into an enforceable contract, is alone sufficient to grant summary judgment as to Plaintiff's breach of contract claim, the Court will still address Defendant's other arguments regarding the breach of contract claim.

standing alone, evidence that the Parties intended not to be bound until such an agreement was reduced to writing. As such, summary judgment is not warranted on this ground.

### B.      Summary Judgment on Unjust Enrichment Claim

In Count II for Unjust Enrichment, MDI avers that it established and operated Ayassure to provide services to James River at below market rates based upon the representation that James River would purchase Ayassure once it was established, and that MDI conferred a benefit to James River by having Ayassure deliver services at below market rates (ECF No. 17 at ¶¶ 51-52). Defendant argues that this claim fails for two reasons: (1) MDI's unjust enrichment claim is precluded by the existence of an express written contract concerning the same subject matter, *i.e.* the rates charged by MDI/Ayassure to James River; and (2) it fails because it incorporates allegations of an express agreement. In making this argument, Defendant relies on the mutually executed work orders, Mr. Singh's deposition testimony regarding those work orders, and Plaintiff's complaint which incorporates those work orders, as well as all other alleged facts, into the claim for unjust enrichment (ECF No. 180 at  ¶¶ 8, 20, 27)). In response, Plaintiff argues that it is entitled to bring its unjust enrichment claim in the alternative and relies on Mr. Singh's declaration to evidence that the below-market rates were "based exclusively on [the] agreement and understanding that James River would purchase Ayassure, and for no other reason" (ECF No. 188 at 17 (citing ECF No. 187-1 (Singh Decl.) at ¶ 14)).

Under Florida law, "[a] claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc*., 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)).

15

However, an "unjust enrichment claim [is] precluded by the existence of an express contract between the parties concerning the same subject matter." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1322 (S.D. Fla. 2014) (citing *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008)). Here, the unjust enrichment claims are based on MDI's provision of Ayassure's services at below-market rates; these rates were expressly agreed to by way of numerous written contracts, or work orders, which were all executed by both Ayassure/MDI and James River (ECF No. 181 at 15-16 (citing to ECF No. 180 at ¶ 20)).

Plaintiff avers that "MDI was willing to charge James River below-market rates because James River led MDI to believe that the [P]arties had an agreement that would culminate in James River's purchase of Ayassure" and thus it would be inequitable to allow James River to retain the benefit conferred by MDI "in consideration of a purported agreement that James River now claims to be unenforceable" (ECF No. 188 at 17). However, the written work orders in no way acknowledge or incorporate the oral agreement to purchase Ayassure, or premise the rates based on a future sale (ECF No. 151-4). Indeed, the rates at issue were set before the Parties allegedly entered into the December 28, 2017 agreement to purchase Ayassure. According to Plaintiff, "James River initially set Ayassure rates at $16/hour for its IT employees and $20/hour for the most senior amongst them. Then James River unilaterally reduced these rates at $13/hour and $17/hour effective in June 2017 . . ." (ECF No. 188 at 5 (citing ECF No. 187-7)).

Plaintiff claims that in May 2016 the Parties reached an initial agreement that "(a) MDI would undertake the substantial investment and risk necessary to create an IT services company in India named Ayassure; (b) James River and MDI would jointly operate Ayassure; (c) MDI would charge James River far-below-market rates for Ayassure's services while the parties worked together to establish the proof of concept; and (d) if the concept proved to be successful after a

16

trial period, then the parties would agree on a price for James River to acquire Ayassure from MDI" (ECF No. 188 at 4 (citing 187-1 (Singh Decl.) at ¶¶ 5-7, 13-14)). Pursuant to this proffer, MDI agreed to charge below market rates without any assurance that James River would purchase Ayassure, and if even MDI did contemplate that Ayassure would ultimately be purchased, there was no discussion as to how much money MDI would make, or lose, from the sale at the time they agreed to provide services at below market rate.

Plaintiff further argues that that MDI's "obligation" to provide below market rates should be "unenforceable as the product of a mutual mistake, misunderstanding, unconscionability, or fraud" (ECF No. 188 at 17). Specifically, Plaintiff avers that "any purported written agreement to charge James River below-market rates is the unenforceable product of a fraud, given that those agreements were not executed contemporaneously with the work provided (*id*. at 18 (citing ECF No. 187-1 (Singh Decl.) at ¶ 16)). However, Plaintiff fails to explain or provide any case law that states an agreement put into writing after the parties fulfilled their respective sides of the bargain is fraudulent. Plaintiff does not dispute that Mr. Singh executed the work orders on behalf of MDI, so whatever fraud Plaintiff here invokes is not a claim that the work orders are fabricated evidence. MDI/Ayassure agreed to provide specific services at specific rates, and James River agreed to pay those rates for those services, as demonstrated by the fact that MDI/Ayassure did render those services and James River did pay the agreed rates. Whether this contract was reduced to writing and executed prior to or after the work was performed in exchange for payment is not determinative as to whether Plaintiff can now bring a claim for unjust enrichment. It cannot; express contracts exist concerning the rates that were charged. Thus, the undersigned hereby **RECOMMENDS** that Defendant's Motion for Summary Judgment (ECF No. 181) be **GRANTED** as to Count II for Unjust Enrichment.

### C.       Summary Judgment on Promissory Estoppel Claim

Defendant contends that MDI's promissory estoppel count fails for three reasons: (1) incorporates the allegations of an express agreement; (2) MDI is prohibited from using a promissory estoppel claim to circumvent the Statute of Frauds; and (3) MDI's third amended initial disclosures do not state any damages for a promissory estoppel claim (ECF No. 181 at 17). Defendant relies upon the Complaint (ECF No. 17 at ¶¶ 57, 64), Plaintiff's Third Amended Initial Disclosure (ECF No. 180 ¶ 28 (citing ECF No. 180-1 at 7-8)) and the August 28, 2020 Evidentiary Hearing Transcript (ECF No. 181-1 at 21:23-22:3, 148:17-21) in support.

In Response, Plaintiff concedes that its promissory estoppel claim should be dismissed, though without prejudice. No argument or evidence refuting the merits of Defendant's proffer is included in Plaintiff's Response. Indeed, Plaintiff's Statement of Material Facts represents that the promissory estoppel claim was abandoned, likewise citing to the August 2020 hearing transcript. Defendant's Reply raises issue with the manner in which Plaintiff moves to dismiss the claim, *i.e.* within its Response to Defendant's Motion for Summary Judgment.

A request to voluntarily dismiss a claim at this stage of litigation must be made by separate motion pursuant to Federal Rule of Civil Procedure 41(a)(2), not as part of a response to a motion for summary judgment. *See Espinoza v. Galardi S. Enterprises, Inc.*, No. 14-21244-CIV-GOODMAN, 2018 WL 1729757, at *14 (S.D. Fla. Apr. 10, 2018) ("Plaintiffs' effort to avoid responding [to a motion for summary judgment] by simply saying that they consent to a without-prejudice dismissal of one count, without seeking leave of Court for the filing of yet another amended complaint[] was procedurally flawed and of no force or effect."). No such motion has been submitted by Plaintiff seeking dismissal pursuant to Rule 41(a)(2), and no basis for voluntary dismissal without prejudice has been advanced.

Defendant's claim regarding the incorporation of an express agreement within its promissory estoppel claim justifies judgment on the claim. *See JI-EE Indus. Co. v. Paragon Metals, Inc*., No. 09-81590-CIV, 2010 WL 1141103, at *1 (S.D. Fla. Mar. 23, 2010) ("There can be no unjust enrichment or promissory estoppel claim when there is an express contract between the parties . . . . Clearly, then, a complaint cannot allege an express agreement in a claim for unjust enrichment or promissory estoppel."). In Count III for Promissory Estoppel, Plaintiff claims that "James River promised to purchase Ayassure from MDI if MDI would do the work of incorporating and establishing Ayassure" and "James River did in fact induce MDI to act on its promise to purchase Ayassure and also to forego other opportunities in order to establish Ayassure" (ECF No. 17 at 8).  However, Ayassure was established in 2016, long before the December 2018 oral agreement at issue to purchase Ayassure was made. If there was a promise on which MDI relied, it would have been the Parties agreement in April 2016 to establish an India-based IT company, which would be run jointly by the Parties (ECF Nos. 180 at ¶ 12; 187 at ¶ 35). Notably, Plaintiff does not allege that this agreement was breached. In fact, Plaintiff specifically states that it is "[u]ndisputed that James River did not breach the April 2016 agreement" (ECF No. 187 at ¶ 14). This agreement, the validity of which is not in dispute, is incorporated into Plaintiff's promissory estoppel claim (ECF No. 17 at ¶ 57). Because Plaintiff could not have relied on a promise to purchase Ayassure that was made in December 2018 when starting up the company in 2016, and because there was an agreement between the Parties regarding the creation of Ayassure that was not breached, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment (ECF No. 181) be **GRANTED** as to Count III for Promissory Estoppel.

## IV.    RECOMMENDATIONS

For the forgoing reasons, the undersigned hereby **RECOMMENDS** that Defendant's

Motion for Summary Judgment (ECF No. 181) be **GRANTED.**

  A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

  **RESPECTFULLY SUBMITTED** in Chambers this on this 2nd day of July, 2021.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE