UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-24821-CIV-CANNON/Louis

**MARINE DEPOT INTERNATIONAL, INC.,**

    Plaintiff,

v.

**JAMES RIVER GROUP, INC.,**

    Defendant.
_____/

## ORDER ADOPTING MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

**THIS CAUSE** comes before the Court upon Magistrate Judge Lauren F. Louis's Report and Recommendation ("Report") [ECF No. 230], and Plaintiff's Renewed Motion to File Exhibits Under Seal or, Alternatively, Plaintiff's Motion to Overrule Confidentiality Objections and to Permit Public Filing ("Motion to Seal") [ECF No. 239].

In the Report, Judge Louis recommends that Defendant's Motion for Summary Judgment [ECF No. 181] be granted.  Plaintiff subsequently filed an Objection to the Report ("Objection") [ECF No. 237].  Defendant filed a Response in Opposition to Plaintiff's Objection [ECF No. 240], and the Court held a hearing on the Report on August 11, 2021 [ECF No. 243].

The Court has conducted a *de novo* review of the Report, Plaintiff's Objection, Defendant's Response in Opposition, the full record in this case, and is otherwise fully advised in the premises. Upon review of the foregoing materials, the Court finds the Report to be well-reasoned and correct and **ACCEPTS** the Report.  Additionally, the Court **GRANTS** Plaintiff's Motion to Seal.

### A. Count 1 – Breach of Contract

At bottom, this case concerns whether the parties had a "meeting of the minds" when they allegedly entered into an oral agreement for Defendant to purchase a startup IT company that Plaintiff established at Defendant's request [ECF No. 180 ¶¶ 1, 15; ECF No. 187 ¶ 17]. Based on the facts in the record, the Court agrees that the parties lacked mutual assent on the essential terms of the oral agreement, and that summary judgment should be entered in Defendant's favor because no genuine issue of fact remains on that question.

Plaintiff, Marine Depot International, Inc. ("MDI"), alleges that the parties entered into two agreements, only one of which is currently in dispute in this case. First, Plaintiff alleges that in April 2016, the parties entered into an oral agreement for Plaintiff to assist Defendant, James River Group, Inc., to establish an India-based company—named Ayassure—that Defendant would eventually purchase from MDI [ECF No. 180 ¶ 11; ECF No. 187 ¶ 11]. The concept for Ayassure was to provide a dedicated IT service provider in India for Defendant to reduce its staffing costs [ECF No. 187 ¶ 29; ECF No. 194 ¶ 29].

Plaintiff testified that there were five essential terms of the April 2016 agreement: (1) "proof of concept" for Plaintiff to create the company in India; (2) that Defendant would "eventually purchase" the company; (3) that Defendant would "operate and manage" the company; (4) that the company would be located in Mohali, India; and (5) that the brother-in-law of Raju Sodhi (Defendant's Chief Information Officer) would be the company's "operations coordinator" [ECF No. 180 ¶ 12; ECF No. 187 ¶ 12].

There is no dispute that the April 2016 agreement was deemed complete by December 28, 2017, and that Defendant did not breach the April 2016 agreement [ECF No. 180 ¶ 14; ECF No. 187 ¶ 14]. Instead, Plaintiff acknowledges that the only alleged breach at issue is a separate oral

CASE NO. 19-24821-CIV-CANNON/Louis

agreement made between Joji Singh, the sole proprietor of both Ayassure and MDI, and Raju Sodhi, on December 28, 2017 [ECF No. 180 ¶ 15; ECF No. 187 ¶ 15].

Plaintiff alleges that while the two men were having dinner at a restaurant in Miami, Florida, they entered into an oral agreement for Defendant to buy Ayassure from Plaintiff. This alleged oral agreement had two material terms: (1) "a $7.5 million purchase price" and (2) "a six-to-seven month payment timeline" [ECF No. 180 ¶ 15; ECF No. 187 ¶ 15]. Plaintiff maintains that those were the only terms required because, after previously entering into an oral agreement to establish Ayassure in April 2016, the parties subsequently "smoothed out all of the essential terms of the inevitable sale" during the proof-of-concept phase, thus "obviating the need for any of those terms to be spelled out in a final contract" [ECF No. 188, p. 13].

It is undisputed that the terms of the December 28, 2017 oral agreement were never put in writing or memorialized in any other fashion [ECF No. 180 ¶¶ 19-20; ECF No. 187 ¶¶ 19-20]. The parties did not specify when payment would occur (other than a general timeframe), how payment would be made (lump sum, installments), or what assets, licenses, leases, property or otherwise would be transferred in the acquisition [ECF No. 181 ¶ 16; ECF No. 187 ¶ 16].

The sale of Ayassure never took place. When Defendant was purportedly required to issue payment for Ayassure between June 2018 and July 2018 (six-to-seven months after the oral agreement), Plaintiff did not send any communication to Defendant to honor its terms [ECF No. 187-2, p. 175:14-20]. Instead, Ayassure continued to provide uninterrupted services to Defendant for nearly two years after the December 28, 2017 agreement [ECF No. 180 ¶ 21; ECF No. 187 ¶ 21]. When Defendant sent an email to Ayassure on September 3, 2019 terminating its contract (more than a year after the purported payment deadline for Defendant to purchase Ayassure), nothing indicates that Plaintiff raised the issue of the alleged agreement [ECF No. 187-

3

2, p. 176:20-24]. In fact, there is no record evidence that Plaintiff mentioned the sale of Ayassure to Defendant at any point in time before filing this lawsuit on October 18, 2019 [ECF No. 1 ¶ 3].

In reviewing the facts in the record, the Magistrate Judge concluded that the alleged oral agreement was unenforceable because it lacked mutual assent on the essential, material terms:

> While evidence here is scant, it is sufficient to demonstrate that at the time the oral agreement allegedly occurred, Ayassure was an ongoing business with a variety of assets including office space, employees, and income stream. The purchase of such an ongoing business is sufficiently complex such that an agreement only as to price and estimated timeframe lacks indicia of agreement on essential terms.

[ECF No. 230, p. 13].

Based on the undisputed record, the Court agrees with the Magistrate Judge that there is insufficient evidence to support an enforceable contract between the parties. "It is not necessary under Florida law to reduce an agreement to writing to bind the parties, as long as the parties intend to be bound at the time of the oral agreement." *Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1341 (S.D. Fla. 1998) (citing *Eastern Air Lines, Inc., v. Mobil Oil Corp.*, 564 F. Supp. 1131, 1145 (S.D. Fla. 1983). However, for an oral agreement to be enforceable, "there must be a meeting of the minds on all essential terms and obligations of the contract." *Venus Lines Agency, Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225, 1229 (11th Cir. 2000) (quoting *Browning v. Peyton*, 918 F.2d 1516, 1521 (11th Cir. 1990). The evidence must show that "the parties mutually assented to 'a certain and definite proposition' and left no essential terms open." *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1301 (S.D. Fla. 2012) (citation omitted). *See also Giovo v. McDonald*, 791 So. 2d 38, 40 (Fla. Dist. Ct. App. 2001) ("Certainly, what is an 'essential term' of a contract differs according to circumstances. But, surely, it must include the terms specified in an offer to make a contract.").

Here, it is undisputed that the only two terms ever mentioned under the alleged December 28, 2017 agreement were: (1) a $7.5 million price, and (2) a six-to-seven-month payment deadline [ECF No. 180 ¶ 15; ECF No. 187 ¶ 15].  The Court agrees with the Report that the alleged oral agreement left open many essential terms to effectuate a multi-million-dollar sale of an international company, including "a closing date, financing, the identity of the entity to purchase Ayassure and ownership transfer" [ECF No. 230, p. 13; ECF No. 181-2, p. 118:13-120:25; 119:2-5, 120:8-22].  Although Plaintiff explains that the parties had already "smoothed out all of the essential terms of the inevitable sale," Plaintiff provides no evidence for this contention [ECF No. 188, p. 13].

The conduct of the parties reinforces the Court's determination that no reasonable jury could find an enforceable contract.  *See Venus*, 234 F.3d at 1229 (affirming district court ruling that there was no "meeting of the minds" for two companies who continued to pay and accept the same shipping rates after allegedly entering an oral agreement to modify the rates).  Specifically, after purportedly securing the sale of a company for $7.5 million, Plaintiff never memorialized or otherwise documented anything related to effectuating the agreement [ECF No. 180 ¶¶ 19-20; ECF No. 187 ¶¶ 19-20]; never mentioned the existence of the agreement when payment was allegedly due [ECF No. 187-2, p. 175:14-20 ("No, that was the only time we discussed it was December 28th.  After that we didn't discuss it.")]; never raised the existence of the agreement as a defense when Ayassure's contract was terminated [ECF No. 187-2, p. 176:20-24]; and never sought to enforce its right under the alleged agreement until this case was filed [ECF No. 1 ¶ 3]. Instead, as the record shows, Plaintiff continued to operate Ayassure and to provide IT services to Defendant for nearly two years after the alleged December 28, 2017 agreement [ECF No. 180 ¶ 21; ECF No. 187 ¶ 21].  Based on the undisputed facts in the record, and construing all inferences in

5

Plaintiff's favor, the Court determines that no reasonable jury could conclude that an enforceable contract exists.

Plaintiff objects, arguing, for example, that a factual dispute exists as to whether the parties had agreed on more than two essential terms, criticizing the Magistrate Judge for "improperly resolv[ing] the threshold fact dispute" in Defendant's favor [ECF No. 37, p. 8]. The Court disagrees. The Report properly accepted Plaintiff's allegations and construed the record in the light most favorable to Plaintiff [ECF No. 230, p. 2, n.1]. So too has the Court, and for the reasons stated in the Report and herein, the Court agrees that no genuine issue of material fact for trial exists on Plaintiff's claim for breach of contract.

Plaintiff also objects to the Report's reference to specific examples of essential terms left open by the parties [ECF No. 237, p. 10; ECF No. 230, p. 13 ("[T]he Parties had not agreed to many of these essential terms including a closing date, financing, the identity of the entity to purchase Ayassure and ownership transfer.")]. In Plaintiff's view, it was improper for the Magistrate Judge to reference other essential terms because "this case is inherently unique," and the parties "purposely divided the creation, development and eventual sale of Ayassure between two contracts" [ECF No. 237, p. 10]. The Court sees no error in the Report. The Report properly acknowledges that contracts differ according to circumstances but reaches the correct conclusion that the alleged contract in this case—and the full record depicting the absence of a meeting of the minds as reinforced by the conduct of the parties—does not permit a reasonable juror to conclude that the December 28, 2017 agreement is an enforceable contract.

B. Count 2 – Unjust Enrichment

With respect to Plaintiff's argument that it is entitled to damages under a theory of unjust enrichment, the Court also finds that argument lacking.

Plaintiff asserts that it operated Ayassure at below-market rates in anticipation of the eventual sale of Ayassure and offered Defendant steep discounts in the hourly rates it charged for IT services [ECF No. 187 ¶ 38; ECF No. 188, p. 17].  It is undisputed, however, that for "each and every resource" that James River used, there was a correlated work order that was mutually executed by MDI, Ayassure, and James River Group [ECF No. 180 ¶ 20; ECF No. 187 ¶ 20].  As indicated in the Report, Plaintiff's unjust enrichment claims are based on rates expressly agreed to by both parties:

> Plaintiff avers that "MDI was willing to charge James River below-market rates because James River led MDI to believe that the [P]arties had an agreement that would culminate in James River's purchase of Ayassure" and thus it would be inequitable to allow James River to retain the benefit conferred by MDI "in consideration of a purported agreement that James River now claims to be unenforceable."
>
> However, the written work orders in no way acknowledge or incorporate the oral agreement to purchase Ayassure, or premise the rates based on a future sale. Indeed, the rates at issue were set before the Parties allegedly entered into the December 28, 2017 agreement to purchase Ayassure.  According to Plaintiff, "James River initially set Ayassure rates at $16/hour for its IT employees and $20/hour for the most senior amongst them. The James River unilaterally reduced these rates at $13/hour and $17/hour effective in June 2017.

[ECF No. 230, p. 16 (internal citations omitted)].

To establish a claim for unjust enrichment under Florida Law, it must be shown that: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)).  However, an "unjust enrichment claim [is] precluded by the existence of an express contract between the parties concerning the same subject matter." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1322 (S.D. Fla. 2014).

The Court agrees with the Report that the existence of separate work orders, mutually executed by both parties, precludes a claim of unjust enrichment on the record in this case. Plaintiff disagrees, stating that the work orders were illegitimate and "induced by fraud" [ECF 237, p. 15]. The record contradicts Plaintiff's assertion. There is no suggestion in the record that the work orders were fabricated or fraudulent; Joji Singh acknowledged in sworn testimony that Ayassure did indeed provide services at the rate agreed to by all parties concerned, and that for "each and every resource" used, the work orders were mutually executed by MDI, Ayassure, and James River Group [ECF No. 180 ¶ 20; ECF No. 187 ¶ 20]. Those work orders, moreover, make no reference to any prior agreement or to any alleged future sale of Ayassure [ECF No. 151-2, pp. 2-17]. For this reason, because of the existence of express contracts concerning the same subject matter, the Court agrees with the Report that no issue for trial exists on Plaintiff's claim for unjust enrichment. *Alhassid*, 60 F. Supp. 3d at 1322.

C. **Motion to Seal**

On February 25, 2020, Magistrate Judge Louis denied without prejudice Plaintiff's motion to file under seal certain confidential documents as exhibits to its Statement of Material Facts in Opposition to Summary Judgment [ECF No. 187; ECF No. 204]. Magistrate Judge Louis found that relevant portions of the exhibits at issue were directly quoted in Plaintiff's Response to Defendant's Motion for Summary Judgement [ECF No. 188], and that the confidential documents were used "solely to support background information that is not in dispute for purposes of Defendant's Motion for Summary Judgment" [ECF No. 204, p. 3].

Plaintiff never moved to refile these documents under seal after Magistrate Judge Louis denied the motion without prejudice but seeks to do so now after the issuance of the Report. Defendant does not oppose the request. Under the circumstances, the Court will grant Plaintiff's

motion with the following observations. Plaintiff acknowledged during the hearing that the filing of these exhibits does not operate to expand the factual record upon which the Report was issued. Moreover, consistent with Magistrate Judge Louis's earlier determination, the substance of these exhibits is contained in Plaintiff's Response to Defendant's Motion for Summary Judgement, and nothing in these documents alters the Court's decision to adopt the Report and Recommendation.

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. The Report [ECF No. 230] is **ADOPTED**.

2. Defendant's Motion for Summary Judgment [ECF No. 181] is **GRANTED**.

3. Plaintiff's Motion to Seal [ECF No. 239] is **GRANTED**.  Plaintiff shall file the Ayassure lease [ECF No. 187 Ex. A-1 and K) under seal and the remaining exhibits [ECF No. 187, Ex. C-D, G-I, and L-Q] publicly.

4. The Court will enter separate final judgment pursuant to Federal Rule of Civil Procedure 58.

**DONE AND ORDERED** in Fort Pierce, Florida this 14th day of September 2021.

AILEEN M. CANNON
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record